DEMONTE FISCHER-HAMILTON,

    Petitioner,

    v.                                      Case No. 24-CV-663-SCD

BRADLEY MLODZIK,
  *Warden, Waupun Correctional Institution,*

    Respondent.

## DECISION AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS

    Demonte Fischer-Hamilton was charged in Wisconsin state court with the shooting death of Jakeem Sims. Before trial, he moved to dismiss the homicide charge, arguing that the prosecution's late disclosure of information about a possible alternative suspect violated his right to due process under *Brady v. Maryland*, 373 U.S. 83 (1963). The trial court denied the motion because the case was still in pretrial posture and granted the defense a continuance so it could investigate the new information. After Fischer-Hamilton was convicted of reckless homicide, his appellate lawyer filed a report explaining why there would be no merit to challenging the trial court's pretrial ruling. The Wisconsin Court of Appeals agreed that the *Brady* claim was meritless, and the Wisconsin Supreme Court denied review.

    Fischer-Hamilton has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his state conviction. The court construed the petition as asserting a single claim under *Brady*. Because the state court's decision denying

that claim was not objectively unreasonable, Fischer-Hamilton is not entitled to relief under § 2254. Thus, I will deny his petition and dismiss this action.

## BACKGROUND

In October 2017, Jakeem Sims was shot and killed following a drug deal gone wrong. *See* Answer Ex. 1, at 8–10, ECF No. 9-1. Sims and three others had arranged the deal via social media, with the buyer using the Facebook profile "Tay versus Biancaa." Sims drove himself and the others to the meeting spot, and when they arrived, they were approached by two individuals. After exchanging the drugs and the money, one of the individuals pulled out a gun and demanded everything. Shots were fired, the car crashed, and Sims later died from a gunshot wound to the head.

The police attempted to track down the shooter (or shooters) by investigating the "Tay versus Biancaa" profile. *See* Answer Ex. 10, at 63–67, ECF No. 9-10. A detective noticed others commenting "Happy Seventeenth Birthday" on the profile's posts on May 19, 2017, which suggested that the person in charge of the profile was born on May 19, 2000. The detective looked up that birthdate in a police database and got one hit: Demonte Fischer-Hamilton. A few days later, the police arrested Fischer-Hamilton for the shooting. *See id.* at 80–82.

The State of Wisconsin charged Fischer-Hamilton with homicide, as a party to a crime. *See* Ex. 1, at 7, 51–52. On January 31, 2018—the day after the final pretrial hearing—the State for the first time turned over information about a possible alternative suspect or co-actor, Marquise Wise. *See id.* at 15–16, 31, 65–66. Based on that new disclosure, on or around February 20, 2018, the trial court granted the defense's motion for permission to introduce

evidence of another suspect, continued the trial to March 26, 2018, and released Fischer-Hamilton on a signature bond. *See id.* at 15, 27, 33, 65–66.

Fischer-Hamilton subsequently moved to dismiss the homicide charge with prejudice, arguing that the State's late disclosure violated *Brady* and section 971.23 of the Wisconsin statutes. *See* Answer Ex. 19, ECF No. 9-19. The trial court denied the motion, finding that while the disclosure was untimely under the state discovery statute, because trial had not yet begun, the proper remedy was to give the defense time to investigate the new information. *See* Answer Ex. 4, ECF No. 9-4. The court noted that it had already granted the defense a continuance based on the late disclosure and had released Fischer-Hamilton from custody. *See id.* at 2–3. The court offered more time to prepare or to instruct the jury about the untimely disclosure, but the defense decided to go forward with the trial. *See id.* at 2–3, 11.

During its case-in-chief, the State sought to call as a witness D.S.J.—Fischer-Hamilton's girlfriend at the time of the shooting. *See* Answer Ex. 11, at 47–69, ECF No. 9-11. The defense objected, arguing that the State had failed to timely disclose D.S.J.'s address on its witness list. The trial court sustained the defense's objection and precluded D.S.J. from testifying in the State's case-in-chief.[1]

The trial focused primarily on whether Fischer-Hamilton was one of the two shooting suspects. *See* Answer Ex. 6, ECF No. 9-6; Answer Ex. 7, ECF No. 9-7; Answer Ex. 8, ECF No. 9-8; Answer Ex. 9, ECF No. 9-9; Ex. 10; Ex. 11; Answer Ex. 12, ECF No. 9-12; Answer Ex. 13, ECF No. 9-13; Ex. 14; Answer Ex. 15, ECF No. 9-15. Eyewitness testimony and video surveillance confirmed that two individuals had approached the victim's vehicle. However,

---

[1] Later, the court precluded D.S.J. from testifying in the State's rebuttal case. *See* Answer Ex. 14, at 3–11, ECF No. 9-14.

3

the eyewitnesses could not identify the suspects, and it was unclear who fired the fatal shot. The State argued that both suspects had fired a weapon and presented evidence connecting Fischer-Hamilton to the "Tay versus Biancaa" Facebook profile. The defense argued that Fischer-Hamilton was not present at the shooting and that Wise was the shooter.

Ultimately, the jury found Fischer-Hamilton guilty of first-degree reckless homicide, as a party to a crime. *See* Answer Ex. 17, ECF No. 9-17. The trial court sentenced him to twenty-two years of initial confinement and twelve years of extended supervision. *See* Answer Ex. 18, ECF No. 9-18.

On appeal, Fischer-Hamilton's attorney filed a report asserting that a direct appeal would be frivolous and without arguable merit. *See* Ex. 1. Among other issues, counsel explained that there would be no merit in appealing the trial court's denial of the pretrial motion to dismiss based on the alleged *Brady* violation. *See id.* at 31–34. Fischer-Hamilton responded to counsel's report and insisted that the *Brady* issue (among others) was meritorious. *See id.* at 88–92.

The Wisconsin Court of Appeals accepted the no-merit report and summarily affirmed the judgment of conviction. *See* Answer Ex. 2, ECF No. 9-2; *see also State v. Fischer-Hamilton*, No. 2022AP1143-CRNM, 2023 WL 4719421, 2023 Wisc. App. LEXIS 820 (Wis. Ct. App. July 25, 2023). The court of appeals agreed that there was no arguable merit to challenging the trial court's denial of the *Brady* claim "because '*Brady* does not require pretrial disclosure of exculpatory evidence. *Brady* instead requires that the prosecution disclose evidence to the defendant in time for its effective use.'" Ex. 2, at 5 (quoting *State v. Harris*, 2008 WI 15, ¶ 63, 745 N.W.2d 397, 412). The court noted that the State's late disclosure

4

violated the state discovery statute and that the trial court employed the remedies available under that statute. *Id.* (citing Wis. Stat. § 971.23(7), (7m)).

The Wisconsin Supreme Court subsequently denied Fischer-Hamilton's petition for review. *See* Answer Ex. 3, ECF No. 9-3.

On May 29, 2024, Fischer-Hamilton filed a federal habeas petition challenging his state homicide conviction. *See* Pet., ECF No. 1. He did not allege any grounds for relief in his petition. *See id.* at 6–9. Nevertheless, United States District Judge Adelman construed the petition as asserting a *Brady* claim based on the State's failure to disclose information about an alternative suspect, as that was the only federal claim discussed in the Wisconsin Court of Appeals' decision. *See* Order, ECF No. 6. The matter was reassigned to this court after the respondent filed his answer, *see* ECF No. 9, and the parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), *see* ECF Nos. 5, 10, 11. Fischer-Hamilton has filed a brief in support of his petition, *see* ECF Nos. 12 & 13; the respondent has filed a brief opposing the petition, *see* ECF No. 16; and Fischer-Hamilton has filed a reply brief, *see* ECF No. 17.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Fischer-Hamilton's habeas petition. Under AEDPA, a prisoner in custody pursuant to a state-court judgment of conviction is entitled to federal habeas relief only if "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). With respect to claims adjudicated on the merits in state court, a federal court can grant an application for a writ of habeas corpus "only if the state court's decision was contrary to clearly established Supreme Court precedent, involved an unreasonable application of such precedent, or was

based on an unreasonable determination of the facts in light of the evidence presented in state court." *Promotor v. Pollard*, 628 F.3d 878, 888 (7th Cir. 2010) (citing 28 U.S.C. § 2254(d)); *see also White v. Woodall*, 572 U.S. 415, 419 (2014).

"A legal principle is 'clearly established' within the meaning of [28 U.S.C. § 2254(d)(1)] only when it is embodied in a holding of [the Supreme] Court." *Thaler v. Haynes*, 559 U.S. 43, 47 (2010) (citing *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A state-court decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13 (opinion of O'Connor, J.). Similarly, a state-court decision results in an "unreasonable application" of clearly established federal law when that court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08.

A writ of habeas corpus may not issue under the "unreasonable application" clause "simply because the federal court concludes that the state court erred. Rather, the applicant must demonstrate that the state court applied the Supreme Court's precedent in an objectively unreasonable manner." *Kubsch v. Neal*, 838 F.3d 845, 859 (7th Cir. 2016) (citing *Woodford v. Visciotti*, 537 U.S. 19, 24–25 (2002)). Thus, the petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*,

6

558 U.S. 290, 301 (2010) (citing *Williams*, 529 U.S. at 411 (opinion of O'Connor, J.)). For purposes of federal habeas review, state-court factual determinations are entitled to "substantial deference." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015). To obtain relief under 28 U.S.C. § 2254(d)(2), a petitioner must demonstrate that the state-court decision "rests upon fact-finding that ignores the clear and convincing weight of the evidence." *McManus v. Neal*, 779 F.3d 634, 649 (7th Cir. 2015) (quoting *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010)); *see also* 28 U.S.C. § 2254(e)(1) (establishing that state factual determinations are "presumed to be correct"). "The decision must be 'so inadequately supported by the record as to be arbitrary and therefore objectively unreasonable.'" *Alston v. Smith*, 840 F.3d 363, 370 (7th Cir. 2016) (quoting *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003)).

When applying the above standards, federal courts look to "the 'last reasoned state-court decision' to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (quoting *Johnson v. Williams,* 568 U.S. 289, 297 n.1 (2013)).

### DISCUSSION

Fischer-Hamilton claims that the State violated his right to due process when it failed to timely disclose evidence of a possible alternative suspect. In *Brady*, the Supreme Court held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S at 87. "To establish a *Brady* violation, a defendant must 'show that (1) the [Government] suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material to an issue at trial.'" *United States v. Shields*, 789 F.3d 733, 746 (7th Cir. 2015) (quoting *United States v. Villasenor*, 664

7

F.3d 673, 683 (7th Cir. 2011)). "Evidence is suppressed when 'the prosecution fail[s] to disclose the evidence in time for the defendant to make use of it' and 'the evidence was not otherwise available to the defendant through the exercise of reasonable diligence.'" *Id.* at 746–47 (quoting *Ienco v. Angarone*, 429 F.3d 680, 683 (7th Cir. 2005)).

Fischer-Hamilton has not demonstrated that he's entitled to federal habeas relief on his *Brady* claim. The Wisconsin Court of Appeals correctly identified *Brady v. Maryland* as the controlling source of law and explained that "*Brady* does not require pretrial disclosure of exculpatory evidence. *Brady* instead requires that the prosecution disclose evidence to the defendant in time for its effective use." Ex. 2, at 5 (quoting *Harris*, 745 N.W.2d at 412). The court did not cite *Brady* directly, but it did quote a Wisconsin state case that accurately recited the *Brady* rule. Fischer-Hamilton does not identify any Supreme Court case with facts materially indistinguishable from the facts of our case. Thus, the court of appeals' decision was not contrary to clearly established Supreme Court precedent.

The Wisconsin Court of Appeals also reasonably applied *Brady* to the facts of Fischer-Hamilton's case and did not base its decision on an unreasonable determination of the facts. The court determined that the *Brady* claim was meritless because Fischer-Hamilton could not show that the State suppressed any evidence. *See* Ex. 2, at 5. The court noted that the information about Wise, the potential alternative suspect, was disclosed in late January and that the trial court continued the trial to late March. Although the court could have stated its finding more explicitly, it's clear from the decision that it believed Fischer-Hamilton had enough time to make effective use of the newly disclosed evidence. Indeed, at trial, the defense used that evidence to argue that Wise was the shooter. *See* Ex. 6, at 46–48.

8

Fischer-Hamilton argues that the State also violated *Brady* when it failed to timely disclose the address of D.S.J.—Fischer-Hamilton's girlfriend at the time of the shooting. Prior to trial, D.S.J. apparently told detectives that Fischer-Hamilton told her that Wise was the one who killed Sims. *See* Ex. 19, at 2. Fischer-Hamilton says that he was unable to subpoena D.S.J. for trial because the State disclosed her address too late.

Fischer-Hamilton misunderstands what happened with D.S.J. When the State sought to call D.S.J. as a witness, the defense objected, arguing that the State had failed to timely disclose her address on its witness list. *See* Ex. 11, at 48–69. The trial court sustained the defense's objection and precluded D.S.J. from testifying in the State's case-in-chief. The court, however, did not prevent Fischer-Hamilton from calling D.S.J. as a *defense* witness. Thus, Fischer-Hamilton has not demonstrated that the State's late disclosure of D.S.J.'s address impeded his ability to make effective use of her testimony.[2]

Fischer-Hamilton also argues that the State's late disclosures violated section 971.23 of the Wisconsin statutes. But "federal habeas corpus relief does not lie for errors of state law." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). Moreover, the State conceded that it violated the discovery statute, and the trial court granted Fischer-Hamilton a continuance as a remedy for that statutory violation. *See* Ex. 4, at 2–3. A violation of Wisconsin's discovery statute, however, does not automatically establish a *Brady* violation. *See Harris*, 745 N.W.2d at 402–03, 411–12.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or deny a certificate of appealability when it

---

[2] It's clear from reading the state trial transcripts that the defense did not want D.S.J. to testify, likely because she had information implicating Fischer-Hamilton (though not as the shooter). *See* Ex. 11, at 49–50, 60.

enters a final order adverse to the applicant." "Where a district court has rejected the constitutional claims on the merits, . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, no reasonable jurist would find it debatable whether Fischer-Hamilton's constitutional rights were violated concerning the State's late disclosures of evidence. I will therefore deny a certificate of appealability.

## CONCLUSION

In sum, Fischer-Hamilton has not demonstrated that he is entitled to relief under 28 U.S.C. § 2254 on his *Brady* claim. Accordingly, for all the foregoing reasons, the court **DENIES** the petition, ECF No. 1, and **DISMISSES** this action. The court also **DENIES** a certificate of appealability. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 21st day of January, 2025.

_____
STEPHEN C. DRIES
United States Magistrate Judge